UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
SCOTT B. ABRAMS,

                     Plaintiff,

        -against-

HBM PRENSCIA INC., SPECTRIS INC.,
AND SPECTRIS PLC F/K/A FAIREY
AVIATION COMPANY LTD.,

                     Defendants.
-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/4/2020

19-CV-10357 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

This action arises from Plaintiff's sale of his company, The Omnicon Group Inc. ("Omnicon"), to Defendant HBM Prenscia Inc. Plaintiff initiated this case on April 23, 2019. Dkt. 1. Plaintiff filed an amended complaint on January 2, 2020, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Am. Compl., Dkt. 29. Fact discovery concluded on August 28, 2020. Dkts. 42, 58. On September 23, 2020, Plaintiff moved for leave to file a Second Amended Complaint ("SAC"). Dkt. 62. Specifically, Plaintiff seeks to amend his breach of contract claim to add allegations that Defendants incorrectly calculated Plaintiff's earnout. *See* Proposed SAC, Dkt. 66, Ex. B. For the following reasons, Plaintiff's motion for leave to file a Second Amended Complaint is DENIED.

## BACKGROUND

On October 17, 2017, the parties executed a Share Purchase Agreement, pursuant to which HBM Prenscia purchased Plaintiff's company, Omnicon, for $29 million. Am. Compl. ¶¶ 52-53. As part of the agreement, Defendants also agreed to pay up to $7 million in the form of

an "earnout" if Omnicon achieved certain revenue targets from July 1, 2017 to June 30, 2018 ("First Earnout Period") and from July 1, 2018 to June 30, 2019 ("Second Earnout Period"). *Id.* ¶¶ 53-55. The earnout provision provided that, "for the First Earnout Period, Plaintiff would receive an amount equal to 35% of the difference between the revenue reported at the end of the First Earnout Period ("the First Period Revenue") and $7,386,800." *Id.* ¶ 55. For the second year, Plaintiff "would receive an amount equal to 35% of the revenue reported at the end of the second year, to the extent it exceeded (A) $7,386,800 or (B) the First Period Revenues." *Id.* If the calculated amount was zero or a negative number, or the revenue "for such Earnout period generated a gross margin of less than fifty-six percent (56%), then in each such case, the Earnout Consideration" would be zero. *Id.* ¶ 56.

Plaintiff alleges, *inter alia*, that Defendants sabotaged his ability to collect any portion of the earnout by intentionally failing to take steps to retain, support, or expand Omnicon's existing client base. *See id.* ¶¶ 127-28. Plaintiff further alleges that Defendants failed to call on him to "intervene and assist in salvaging Omnicon's revenues" pursuant to the parties' consulting agreement. *Id.* ¶¶ 98-101. In his proposed SAC, Plaintiff alleges that Defendants also "failed to calculate the earnout correctly." Proposed SAC ¶ 88. Specifically, Plaintiff claims that Defendants breached the Share Purchase Agreement by "excluding certain revenue in the earnout calculation." *Id.* ¶ 125.

## DISCUSSION

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend] when justice so requires." Leave may be denied if the proposed amendment would be futile, *i.e.*, if the "proposed amendment[] would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

Despite the lenient standard set out in Rule 15, when a scheduling order governs amendments to a complaint, and "a plaintiff wishes to amend after the deadline to do so has passed, the plaintiff must [first] show good cause to modify the deadline under Rule 16 [of the Federal Rules of Civil Procedure]." *BPP Ill., LLC v. Royal Bank of Scot. Grp. PLC*, 859 F.3d 188, 195 (2d Cir. 2017) (citing *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009)).  In other words, "the lenient standard under Rule 15(a) … must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"  *Id.*; *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-31 (2d Cir. 2000) ("despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause").  Thus, only if the moving party can show good cause for his failure to meet the amendment deadline "would the Court need to consider whether the proposed amendment would be futile, unduly prejudicial, or otherwise improper based on the Rule 15(a) standards that otherwise govern motions to amend."  *Sokol Holdings, Inc. v. BMD Munai, Inc.,* No. 05-CV-3749, 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009) (citing *Parker*, 204 F.3d at 340); *Tardif v. City of New York*, No. 13-CV-4056, 2016 WL 2343861, at *5 (S.D.N.Y. May 3, 2016) ("[A] court first considers whether the movant has shown good cause under Rule 16, and, only after finding that the good cause standard is met, proceeds to the analysis under Rule 15.").  "A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d. Cir. 2003); *Tardif,* 2016 WL 2343861, at *5 (plaintiff's five-month gap between discovering new information and seeking leave to amend precluded her from demonstrating the diligence necessary to satisfy Rule 16(b)'s good cause standard).

Here, Plaintiff has failed to establish good cause for seeking leave to file an SAC at this late date. On December 20, 2019, the Court issued a scheduling order indicating that any motion to amend must be filed by January 20, 2020. Dkt. 26. The Court also ordered that all fact discovery be complete by April 24, 2020; the Court subsequently extended the fact discovery deadline to August 28, 2020. Dkts. 26, 42. On March 13, 2020, Defendants produced documents to Plaintiff detailing how Defendants calculated the earnout, including accounting records showing which categories of revenue had been considered in the calculation. Defs.' Opp., Dkt. 67 at 7-8. Despite having sufficient information at that point to move for leave to amend the complaint to add a miscalculation claim, Plaintiff did not move for leave to amend until September 23, 2020, more than six months later. Plaintiff's six-month delay is inconsistent with the "diligence" required to demonstrate "good cause" under Rule 16, even accepting Plaintiff's argument that part of that time was spent reviewing the documents to ascertain that certain categories of revenue had not been included in the calculation of his earnout. *See, e.g., Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) (district court "acted well within its discretion" in concluding that plaintiff's three-month failure to move for amendment prevented plaintiff from demonstrating the diligence necessary to satisfy Rule 16); *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 201-02 (2d Cir. 2007) (affirming denial of leave to amend under Rule 15 where "Plaintiffs became aware of the need to consider a possible [additional] claim … more than seven months before moving to amend their complaint"); *Tardif,* 2016 WL 2343861, at *5. Plaintiff's argument that the SAC is "tailored to recent findings during the course of discovery—specifically the [July 2020] depositions of defendants' witnesses Steve

Fleet and Kyriacos Kyriacou," Pl. Mem. of Law, Dkt. 63 at 1, 4-5, is unpersuasive.[1]  The deposition testimony cited by Plaintiff merely confirmed the contents of the documents that Plaintiff received in March 2020.  *Id*. at 4-5.

In sum, Plaintiff failed to act with the diligence necessary to satisfy Rule 16(b)'s good cause standard.[2]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file a Second Amended Complaint is DENIED.  As previously directed, a pretrial conference will be held on **December 11, 2020 at 10:30 a.m.**  The bench trial in this case will begin on **February 8, 2021 at 10:00 a.m.**  The parties' Joint Pretrial Order, including proposed findings of facts and conclusions of law, is due by **January 15, 2021.**

The Clerk of Court is respectfully directed to close the open motion at docket entry 62.

---

[1]  The cases cited by Plaintiff, *see* Dkt. 69 at 2, suggest that filing a motion for leave to amend within *two* months of acquiring information may be sufficient to establish diligence under Rule 16.  Here, Plaintiff waited six months before seeking leave to amend.

[2]  Even if Plaintiff had established good cause, the proposed SAC is futile because it cannot withstand a 12(b)(6) motion to dismiss.  *See Panther Partners Inc.*, 681 F.3d at 119.  The SAC's allegation that Defendants breached the SPA because they "failed to calculate the earnout correctly" is conclusory and unsupported by any additional factual allegations.  Proposed SAC ¶ 88.  Although the SAC alleges that the "earnout calculation should have included Omnicon revenues, HBM Prenscia revenues resulting from Omnicon employee work, and HBM Prenscia revenues in the design reliability assurance categories outlined in the SPA," and that the "evidence strongly suggests that Defendants only included Omnicon revenues and a fraction of the other categories of 'revenues' in year one of the earnout calculation,"  this vague allegation fails to identify specifically what revenue was allegedly improperly excluded in violation of the SPA.  *Id.; see Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (a complaint's allegations must "nudge" the complaint "across the line from conceivable to plausible.").

Lastly, although Plaintiffs insist that Defendants would not be prejudiced by the amendment, even if that were true (which the Court need not decide), "that defendants suffered no prejudice does not change the fact that plaintiff[] failed to pursue amendment with diligence."  *Gullo*, 540 F. App'x at 47.  Moreover, if the Court had to decide the issue, it would tend to agree with Defendants that they would be prejudiced by an amendment.  To defend the proposed new claim, Defendants would be required to present detailed accounting evidence that is entirely unnecessary in order to defend the existing claim that Defendants sabotaged Plaintiff's earnout in bad faith.  Changing the focus of the trial after discovery has closed would likely prejudice the Defendants.

**SO ORDERED.**

Date:  **November 4, 2020**          **VALERIE CAPRONI**
       **New York, New York**          **United States District Judge**